# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ABINGDON DIVISION

| | | |
|---|---|---|
| **FIRST SENTINEL BANK,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:17CV00043 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **UNITED STATES OF AMERICA, ET AL.,** | ) | By: James P. Jones |
| | ) | United States District Judge |
| | ) | |
| Defendants. | ) | |

*Mark L. Esposito and M. Shaun Lundy, PennStuart, Bristol, Tennessee, for Plaintiff; Catriona M. Coppler and Ryan O. McMonagle, Trial Attorneys, Tax Division, U.S. Department of Justice, Washington, D.C., for United States.*

In this civil case, the plaintiff bank seeks a determination that its mortgage lien survived a nonjudicial foreclosure sale of the subject real property and that tax liens against the property remain inferior to the bank's lien. The United States contends that the bank's lien merged with its title when it purchased the property at the foreclosure sale, and therefore the bank's lien was extinguished and the tax liens have been elevated in priority. Both parties have moved for summary judgment. For the reasons that follow, I will grant in part the bank's Motion for Summary Judgment and deny the United States' Motion for Summary Judgment.

I.

The following undisputed facts are taken from the summary judgment record.

Edson L. Knapp and Renda K. Knapp owned real property in Richlands, Virginia (the "Property"). The Knapps executed a credit line deed of trust (the "Deed of Trust") on September 26, 2007, for the benefit of First Sentinel Bank ("First Sentinel"), which granted First Sentinel a first lien security on the Property. The initial principal amount of the Deed of Trust was $180,000. In 2010, after First Sentinel recorded the Deed of Trust, the Internal Revenue Service ("IRS") filed federal tax liens against the Property. The tax liens total $305,439.78 and represent unpaid federal income taxes from 2008 and 2009.

On June 11, 2013, Frederick W. Harman was appointed Substitute Trustee under the Deed of Trust. As of June 13, 2013, the fair market value of the Property was $110,000. On June 28, 2013, Harman conducted a nonjudicial foreclosure sale of the Property, which was purchased by First Sentinel for $130,000. The Knapps owed $156,549.64 in principal to First Sentinel, in addition to real estate taxes, interest, and late charges.

Internal Revenue Code § 7425(b) provides that property subject to a tax lien remains subject to the lien following a nonjudicial foreclosure sale unless the IRS is given at least 30 days notice of the foreclosure sale. Trustee Harman gave the

IRS only 16 days notice of the sale of the Property and sent the notice to the wrong IRS office.

Following the foreclosure sale, Trustee Harman added a notation to the promissory note secured by the deed of trust stating, "The unpaid balance is credited with $126,178.13, as a result of the foreclosure sale on June 28, 2013." ECF No. 33-1.[1] There is no evidence that First Sentinel agreed to or acknowledged this notation. First Sentinel had been aware of the IRS liens but believed they were discharged at the time of the foreclosure sale. Following the foreclosure sale, First Sentinel did not release the Deed of Trust. It did not learn that the IRS liens had not been discharged until after it entered into a contract to sell the Property in December 2015. As a result of the IRS liens, the contract to sell the Property was terminated.

In January 2015, First Sentinel agreed to accept from the Knapps a reduced sum of $35,000, without any additional interest, to be paid over 28 months. The Knapps actually paid $14,918.75, which reduced the base lien amount to $144,717.12. From October 2013 through September 2016, First Sentinel leased the Property to residential tenants at a rate of $800 per month. Beginning in June 2017, First Sentinel entered into a month-to-month lease of the Property at a rate of $500 per month.

---

[1] The difference between the notation amount and First Sentinel's purchase price appears to represent Trustee Harman's fee and expenses of sale.

First Sentinel's Complaint contains two counts. Count I seeks a declaration by the court that its lien on the Property survived the foreclosure sale and has priority over the IRS liens. In Count II, First Sentinel seeks a declaration that the IRS liens cannot be enforced unless any future sale of the Property permits payment in full of the outstanding debt to First Sentinel.[2]

II.

The parties' cross motions for summary judgment have been fully briefed and orally argued and are ripe for decision. Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is not a "disfavored procedural shortcut," but an important mechanism for disposing of "claims and defenses [that] have no factual basis." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

The key question to be resolved in this case is whether First Sentinel's lien merged into its fee simple title as a result of its purchase of the Property at the foreclosure sale. The parties agree that this question is controlled by state law. *See, e.g., Tompkins v. United States*, 946 F.2d 817, 819 (11th Cir. 1991) (applying

---

[2] The plaintiff has sued both the United States and the Internal Revenue Service. I will refer to both collectively as "the United States" and my rulings cover both defendants.

state law to determine merger issue); *United States v. Colorado*, 872 F.2d 338, 339-40 (10th Cir. 1989) (same).

More than a century ago, the Supreme Court of Virginia explained that "where the legal ownership of the land and the absolute ownership of the incumbrance become vested in the same person, the intention governs the merger in equity." *Rorer v. Ferguson*, 31 S.E. 817, 818 (Va. 1898) (internal quotation marks and citation omitted).

> If this intention has been expressed, it controls. In the absence of such an expression, the intention will be presumed from what appear to be the best interests of the party as shown by all the circumstances. If his interests require the incumbrance to be kept alive, his intention to do so will be inferred and followed. If, on the contrary, his best interests are not opposed to a merger, then a merger will take place according to his supposed intention.

*Id.* (internal quotation marks and citation omitted). In *Rorer*, the court found that the property owner had assumed the debt only to protect his title and that if his lien were extinguished, "this result would inure to the benefit, not of [the property owner], by whom it was discharged, but of the junior incumbrancer." *Id.* at 819. The court held that the deed of trust had not merged into the title and "that in equity it will be kept alive and in force for the protection of his title." *Id.*

The court applied the same principal in *Joyner v. Graybeal*, 132 S.E.2d 467 (Va. 1963), but reached a different result. In that case, a holder of a note on an automobile obtained a judgment against the buyer and the dealer, who had

indorsed the note. *Id.* at 468. The dealer sought to set aside the judgment. *Id.* The dealer had delivered the note and the certificate of title to the note holder following the buyer's purchase of the car. *Id.* When the buyer defaulted, the holder of the note had the buyer transfer title to the holder, without the dealer's knowledge. *Id.* at 469. The court restated the rule that "[w]hen one acquires absolute title to property which secures his debt, in the absence of evidence showing a contrary intention it is presumed that he intended to merge his secured interest into the legal title acquired." *Id.* The court then noted that the holder had directed the plaintiff to write "None" on the title certificate in the space for outstanding liens. *Id.* That notation showed that the note holder did not intend to preserve the lien after the title transfer. *Id.* The court held that "[s]ince there is no evidence to rebut the presumption that the plaintiff intended to merge the lien into his legal title when he acquired ownership of the car, by this act he extinguished the lien and eliminated the security." *Id.*

The Supreme Court of Virginia has continued to reiterate and abide by the rule that intention controls merger, and where the note holder did not express an intention, one will be presumed in accord with the note holder's interests. In *Ciejek v. Laird*, 380 S.E.2d 639, 641 (Va. 1989), the court adopted Professor Glenn's explanation that

> [m]erger is a technical rule at best, and so, even though two rights become united in one person, a court of equity will keep them

> separated if that is required by the outstanding claim of a third party or is necessary in view of the proprietor's own situation. This is often described as a matter of intention, but in reality it is a "rule of law," that is, it is a principle that guides our courts of equity when the facts are clear.

(quoting 1 G. Glenn, Mortgages, Deeds of Trust, & Other Security Devices as to Land § 45.2 (1943) (footnotes omitted)). The court in *Ciejek* indicated that where the parties' intention is unclear, a factual dispute precludes resolution of the issue on summary judgment. *Id.* The court's earlier decisions and Glenn's explanation indicate, however, that when there is no evidence of the note holder's intention, a court should infer an intention that serves the note holder's interests.

Here, there is no evidence which would indicate that First Sentinel intended its lien to merge with its title upon purchasing the Property in foreclosure. Unlike in the *Joyner* case, First Sentinel did not represent on the note that the Property was free of all liens. The only evidence bearing upon this issue is the fact that First Sentinel did not release its Deed of Trust following its purchase of the Property, which suggests that First Sentinel meant to preserve its lien and did not intend for merger to occur. The United States argues that First Sentinel's lease of the Property shows that it intended a merger, but the fact that First Sentinel leased the Property sheds no light on whether it intended to extinguish its lien. The existence of a lien does not prevent real estate from being leased.

Based on the undisputed facts, I will apply the equitable rule described above and infer that First Sentinel did not intend a merger. Merger would clearly be against First Sentinel's interests in this case, as it would extinguish First Sentinel's lien and elevate the formerly junior and possibly valueless tax liens while also preventing First Sentinel from selling the Property unless it paid the IRS to discharge the tax liens. This result would be unjust, particularly given that it was Trustee Harman rather than First Sentinel who failed to give proper notice to the IRS and therefore prevented the discharge of the tax liens, which far exceed the appraised value of the Property. To find that First Sentinel's lien has been discharged and the tax liens elevated under these facts would be to grant the IRS an unexpected windfall based on a technical error of a third party, harming the blameless bank that had timely recorded its Deed of Trust in order to protect its security interest. Virginia law of merger, an equitable doctrine, does not allow such a finding.

Having concluded that no merger occurred, the next issue is the priority of the liens. That issue is controlled by federal law, *Aquilino v. United States*, 363 U.S. 509, 513-14 (1960), and is straightforward. Section 7425 of the Internal Revenue Code states, in relevant part,

> a sale of property on which the United States has or claims a lien . . . pursuant to a nonjudicial sale under a statutory lien on such property . . . shall . . . be made *subject to and without disturbing such lien* or title, if notice of such lien was filed or such title recorded in the place

provided by law for such filing or recording more than 30 days before such sale and the United States is not given notice of such sale in the manner prescribed in subsection (c)(1).

26 U.S.C. § 7425(b) (emphasis added). It is undisputed that the tax liens were properly recorded more than 30 days before the nonjudicial foreclosure sale and that the United States did not receive notice of the sale in the matter required by subsection (c)(1). Because the IRS did not receive proper notice as required by the statute, the tax liens were not discharged by the nonjudicial foreclosure sale, and they remained on the property. But they also remained junior to First Sentinel's lien, which was recorded first in time, as nothing has occurred to elevate the tax liens in priority. *See United States v. McDermott*, 507 U.S. 447, 449 (1993); *Progressive Consumers Fed. Credit Union v. United States*, 79 F.3d 1228, 1234-35 (1st Cir. 1996); *Tompkins*, 946 F.2d at 820; *Colorado*, 872 F.2d at 341-42; *First Am. Title Ins. Co., v. United States*, 848 F.2d 969, 973-74 (9th Cir. 1988).

In regard to Count II of its Complaint, First Sentinel asks me to "[d]eclare that the Tax Liens constitute a cloud on the title and that any future sale of the Property will be free and clear of the Tax Liens unless the sale proceeds exceed the amount owed to Lender under the note secured by the Deed of Trust." Pl.'s Mem. in Supp. Mot. Summ. J. 10, ECF No. 20.[3] The United States, on the other hand,

---

[3] At oral argument, First Sentinel conceded that this court does not have the power to order a resale of the Property and that it is the province of the state courts to determine whether a judicial sale will take place.

wants me to find that in the absence of merger, the value of First Sentinel's lien was reduced following First Sentinel's purchase of the Property in accord with the notation Trustee Harman made on the promissory note securing the Deed of Trust. Section 2410's waiver of sovereign immunity is narrow, however, and I can provide only limited relief in this case. *See* 28 U.S.C. § 2410(a). I previously held that this action was a quiet title action for which sovereign immunity has been waived and that subject matter jurisdiction existed on the question of lien priority. Op. & Order 6–7, May 29, 2018, ECF No. 13. This court does not have jurisdiction, however, to declare the tax liens valueless or to discharge them. *See E.J. Friedman Co. v. United States*, 6 F.3d 1355, 1358 (9th Cir. 1993) (holding that "such a claim simply does not fall within the scope of § 2410"). If the parties seek further remedies beyond the declarations above, they will have to pursue them through other avenues.

III.

For the foregoing reasons, it is **ORDERED** as follows:

1. First Sentinel's Motion for Summary Judgment, ECF No. 19, is GRANTED as to Count I of the Complaint;

2. Count II of the Complaint is DISMISSED without prejudice;

3. The United States' Motion for Summary Judgment, ECF No. 21, is DENIED;

4. The court declares that First Sentinel's deed of trust lien continues to encumber the Property; and

5. The court declares that the tax liens in favor of the United States continue to encumber the Property but are subordinate to First Sentinel's deed of trust lien.

A separate final judgment will be entered herewith.

ENTER: January 25, 2019

/s/ James P. Jones
United States District Judge